NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | |
|---|---|
| SUZANNE K. LAWSON,                    ) | CASE NO. 3:21cv1119 |
| ) | |
| Plaintiff,             ) | JUDGE KNEPP |
| ) | United States District Judge |
| v.                            ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL    ) | WILLIAM H. BAUGHMAN, JR. |
| SECURITY,                              ) | |
| ) | REPORT & RECOMMENDATION |
| ) | |
| Defendant,           | |

**Introduction**

Before me by referral[1] is an action under 42 U.S.C. §405(g) by Suzanne K. Lawson seeking judicial review of the March 4, 2021 decision of the Commissioner of Social Security that, on remand, denied Lawson's December 2016 application for disability insurance benefits through September, 2019, the date last insured, but concluded that she as entitled to supplemental security income as of February 28, 2021.[2] The Commissioner filed the transcript of the administrative

---

[1] Pursuant to General Order 2022-03 the matter was referred to me in a non-document order entered February 15, 2022.
[2] ECF No. 1.

proceedings.[3] The parties have briefed their positions[4] and have met and,, pursuant to my Order,[5] have conferred with the objective of reducing or clarifying the matters at issue.[6]

For the following reasons, I will recommend that the decision of the Commissioner be reversed as is more fully set forth below, and that the matter be remanded for further proceedings consistent with this recommendation.

**Facts**

The facts relevant to the present dispute may be simply stated.

Initially, as noted, the current decision of the ALJ followed a remand from the district court and was under directions from the Appeals Council to give further consideration to the opinion evidence and then to explain the weight given to such evidence.[7]

The ALJ found that Lawson has the following severe impairments: degenerative disc disease of the lumbar spine with stenosis, spondylosis, disc prolapse and radiculopathy; chronic pain syndrome, bilateral carpal tunnel syndrome with trigger finger; type 2 diabetes with peripheral neuropathy; status-post trigger finger release surgery; right ganglion cyst; left latral epicondylitis; obesity and status-post left elbow surgery.[8] After assessing Lawson's non-severe impairments[9] and further concluding that Lawson had no impairments or combination of impairments that met or medically equaled a Listing,[10] the ALJ determined that Lawson had the following RFC:

---

[3] ECF No. 7. Pursuant to Local Rule 16.3.1(d), the filing of the administrative record also constitutes the Commissioner's answer.
[4] ECF Nos. 8 (Lawson), 9 (Commissioner).
[5] Non-document order entered April 5, 2022.
[6] ECF No. 10.
[7] Tr. at 801.
[8] *Id.* at 804.
[9] Id. at 805-06.
[10] *Id.* at 806-07.

[Lawson] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: she can stand/walk four hours in an eight-hour workday; sit up to six hours in an eight-hour workday; can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and frequently handle, finger, and feel with the bilateral upper extremities. She can never be exposed to hazards such as moving machinery and unprotected heights.[11]

In formulating that RFC, the ALJ first reviewed Lawson's own testimony,[12] followed by the clinical records.[13] The ALJ then considered the opinion evidence. In that regard, she first addressed opinions of state agency medical consultants,[14] followed by the opinion of consultative psychological examiner Dr. Robert Whitehead, M.D.[15]

More relevant to the present case, the ALJ then addressed in some detail two opinion from Dr. Joshua Ozbout,[16] D.O., Lawson's primary care provider.[17] Initially, the ALJ considered a March 2017 assessment from Dr. Ozbout that, *inter alia*, opined that Lawson had limitations on standing/walking and sitting, as well limitations on driving, and could "never" handle or finger."[18] The ALJ found these limitations "contradictory and vague" and stated the opinion was not given great weight.[19] By way of explanation, particularly as to the opinion's view of Lawson's ability to handle and feel, the ALJ pointed to contemporaneous clinical tests from other physicians showing normal grip strength and "essentially normal" ability to handle and feel.[20] Moreover, the ALJ pointed to evidence that Lawson could grip the steering wheel while driving; sort, handle and

---

[11] *Id.* at 808.
[12] *Id.*
[13] *Id.* at 809-12.
[14] *Id.* at 812.
[15] *Id.* at 812-13.
[16] As the Commissioner points out, the correct name for this physician is Ozbolt, not Ozbout. See*, id.* at 1268. However, because both the ALJ's decision and Lawson's brief refer to him as Ozbout, that name is used here.
[17] Tr. at 813. Dr. Ozbout's status as a primary care source is not here at issue but is clearly shown in the record. See *id.* at 1220, 1227, 1235, 1241, 1250, 1267-68 (Dr. Ozbout's examination notes from 2018-2020).
[18] *Id.* at 813.
[19] *Id.*
[20] *Id.*

use paper files; and care for two very young children, "which indicates a greater ability to lift, carry, finger, handle and grasp than what [Lawson] has alleged."[21]

Dr. Ozbout submitted a Physical Medical Assessment Form in October 2018 that amended his previous opinion.[22] The 2018 opinion stated that Lawson: (1) could never balance, stoop, kneel, crouch or crawl; (2) or walk a combined total of less than two hours; (3) would be off task more than 25% of the workday and (4) be absent more than 15 days a month.[23]

The ALJ found Dr. Ozbout's 2018 opinion not "persuasive."[24] Once again, as reasons for finding this opinion to be not persuasive, the ALJ stated that this opinion was not supported by the record which established that "[Lawson] demonstrated a normal, stable, gait on multiple occasions, despite neuropathy in her feet."[25] The ALJ further noted that the restrictions in Dr. Ozbout's 2018 opinion were not consistent with a July 2109 clinical finding that was negative for gait problems or back pain, and also inconsistent with Lawson's own testimony that she "can wash dishes and do laundry, though it takes her longer."[26]

Lawson had past relevant work as: a semi-truck driver and driving instructor.[27] The ALJ, with the assistance of testimony from a vocational expert, determined that, under the RFC, Lawson was not capable of performing her past relevant work.[28] Then the ALJ found because the established onset date of February 26, 2021 was so close to February 28, 2021 – the date when

---

[21] *Id*.
[22] *Id*.
[23] *Id*.
[24] *Id*. I note that by assessing the opinion as not persuasive, the ALJ appears to have shifted from the treating source/good reasons rule that assigned weight to the succeeding standard (for claims filed after 2017) that assessed the "persuasiveness" of an opinion and did not include a preference for opinions from treating sources. See, fn. 35 infra.
[25] Tr. at 813
[26] *Id*.
[27] *Id*. at 814.
[28] *Id*. at 815.

Lawson would be 50 years old, or an individual closely approaching advancing age – Lawson would be treated as being an individual closely approaching advancing age as of the established date of onset.[29]

Then, with the assistance of testimony from the VE, the ALJ determined that prior to the established onset date Lawson, with the restrictions of the RFC, would be able to perform the duties of order clerk, electronics inspector and laboratory tester, and that jobs in all these categories exist in sufficient numbers in the national economy.[30] However, subsequent to the established onset date, the ALJ found there were no jobs in the national economy that Lawson could perform, and so Lawson was found to be disabled beginning on that date.[31] Thus, Lawson was not disabled from December 5, 2016 through September 30, 2019 (the date last insured) and so was ineligible for disability insurance benefits. But, because she has been disabled since February 28, 2021, she is eligible for supplemental security income.[32]

**Issues/Analysis**

Issues

Lawson raises two issues for judicial review:

1. The ALJ failed to properly evaluate the treating source opinions provided by Dr. Ozbout.

---

[29] *Id.*
[30] *Id.* at 816.
[31] *Id.* at 816-17.
[32] *Id.* at 817.

    2.      The ALJ's decision should be reversed and remanded because the ALJ did not have the authority to hear and ultimately make the decision in this case.[33]

Standards of review

    1.      As regards the first issue, because Lawson file her claim in December 2016,[34] any evaluation of opinion evidence arising from that claim would be conducted under the rules existing at that time.[35] In this case, the relevant rule is the well-known treating source/good reason rule that required an ALJ to give controlling weight to the opinion of a treating source if that opinion was "well-supported by medically acceptable by clinical and laboratory techniques" and "not inconsistent with the other substantial evidence in [the] case record."[36] If the ALJ determines not to give controlling weight to the opinion of a treating source, the ALJ must then determine how much to assign, employing a variety of factors,[37] and then give "good reasons for the weight actually assigned."[38] "These reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources medical opinion and the reasons for that weight."[39]

    2.      As to the second issue, I observe that I have not found, nor have I been cited to, any opinion where a court in this district has agreed with Lawson's contention that Commissioner Saul was unconstitutionally appointed, thus making any decision by an ALJ deriving authority from Commissioner Saul defective and so requiring a remand. In fact, this matter was extensively

---

[33] ECF No. 8 at 1.
[34] Tr. at 12.
[35] See, *Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules),* 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.
[36] *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted).
[37] *Id.*
[38] *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011); 20 C.F.R. § 404.1527 (c)(2)
[39] *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) (internal citation omitted).

analyzed in *Butcher v. Commissioner*.[40] I hereby adopt the reasoning and conclusions of *Butcher* and so recommend that this issue be found to be without merit.

Analysis

Thus, the remaining issue is whether the ALJ here properly considered the opinions of Lawson's treating source, Dr. Ozbout, and then gave good reasons for deciding to give those opinions less than controlling weight.

As set forth above, several things trouble me about the current ALJ's treatment of the opinions of Dr. Ozbout.

First, it is clear that the ALJ used two separate standards for evaluating the two opinions at issue. The 2017 opinion was correctly analyzed under treating source/good reason standard that was proper to an application filed before 2017. However, the ALJ's analysis of Dr. Ozbout's 2018 opinion strongly suggests it was analyzed under the rubric in place for applications filed after 2017 – namely, the standard that replaced a preference for treating source opinions and required the assignment of weight with a different standard.

In that regard, it is initially fundamental that an ALJ apply the proper standard in reviewing the evidence. It is also clear that the proper standard applicable to all opinion evidence in this case is the treating source/good reasons rubric. Moreover, the apparent use of two different standards for evaluating the two opinions of Dr. Ozbout effects both the ability of the reviewing court to adjudicate the ALJ's application of the law to the claim at issue, as well as the claimant's right to understand why her claim was denied.

---

[40] 2021 WL 6033683 (S.D. Ohio Dec. 21, 2021) (R&R), adopted, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022).

Unfortunately, the apparent use here of two different standards of review of Dr. Ozbout's opinions frustrates both any meaningful judicial review and any due process right of the claimant to understand the reasons for denying her claim.

In addition, I would also note that the reliance of the ALJ on Lawson's "gait," or on her ability to perform tasks of daily living, as being contradictory to a functional opinion as to her inability to stand/walk for many consecutive hours in a workday is also troubling. While contrasting the performance of activities of daily living to a functional opinion by a medical source is certainly proper in evaluating such a functional opinion, it must be remembered, as the ALJ herself noted in a related context, that the pivotal question is not whether such abilities exist, but how long such abilities can be maintained consistently in a work situation.[41] Noting that Lawson had normal gait in an examination, or can do a load of laundry,[42] without more, does not essentially contradict an opinion that Lawson would be restricted from standing/walking for multiple hours in a work setting.

## Conclusion

For the reasons stated above, I recommend that the decision of the Commissioner be reversed and the matter be remanded for further proceedings consistent with this recommendation.

Date: 08/29/22　　　　　　　　　　　　　　　　　　　　　s/William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[41] Tr. at 809.
[42] Indeed, as the ALJ herself noted and is related above, Lawson's testimony was that she could do these activities but that they took longer. That alone begs the question of how long she could do the activity at issue and do so in a work setting where she may not be able to prolong the time for completion.

## NOTICE REGARDING OBJECTIONS

Any party may object to this Report and Recommendation.  To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation.  If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it.  If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.